UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANGER,<br><br>                             Plaintiff,<br><br>v.<br><br>WALTER A. ANDERSON, in individual and representative capacity as trustee; ROLARO CORPORATION, a California corporation; and DOES 1-10,<br>                             Defendants. | Case No.: 15-CV-642 L (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION TO ENFORCE THE SETTLEMENT**<br><br>(Dkt. No. 19) |

Before the Court is Defendants' Motion to Enforce the Settlement. (Dkt. No. 19.) Plaintiff opposes. (Dkt. No. 20.) For the reasons stated below, the Court **RECOMMENDS** Defendants' motion be **GRANTED**.

**I.   Relevant Background**

On March 23, 2015, Plaintiff Chris Langer ("Plaintiff") filed this action against Defendants Byrdie Anderson, Walter Andersen, and Rolaro Corporation ("Defendants"), alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et*

1

*seq* and the Unruh Civil Rights Act.[1]  (Dkt. No. 1.)  Plaintiff alleges Defendants are or were the owners, business operators, lessors or lessees for Rolando's Taco Shop, a restaurant located in San Diego, California.  (Id. at 2.)  Plaintiff alleges in his Complaint that the restaurant's parking lot lacks adequate van parking space, and that the transaction counter height inside the restaurant is noncompliant.  (Id. at 3-6.)

Near the inception of this case, counsel for both parties undertook settlement negotiations via email.  In particular, on April 16, 2015, Plaintiff's counsel stated in an email that Plaintiff could not accept the Defendants' offer of $3,500 to settle, but would counter for $10,500 in addition to "bringing the issues addressed in the Complaint into compliance."  (Dkt. No. 19-2 at 4.)  Plaintiff's counsel stated that if this is acceptable, then they would "forward a settlement agreement for review and execution."  (Id.)  Over the next few weeks, counsel for the parties continued to negotiate via email by exchanging counteroffers regarding the monetary amount and remediation to the property.  (Dkt. No. 19-2 at 6-7.)  On April 21, 2015, Defendants' counsel confirmed that remediation to the property had been completed.  (Dkt. No. 19-2 at 6-7.)  At no point during the parties' continued negotiations was confidentiality discussed as a material term.  (Id.)

On April 28, 2015, after remediation to the property had been confirmed, counsel for the parties reached an agreement regarding the monetary amount, as each side confirmed they had authority to settle the case for $7,000.  (Dkt. No. 19-2 at 6.)  Specifically, counsel for the parties' email exchange states:

| | |
|---|---|
| [Plaintiff's Counsel:] | Do you have authority for 7k? |
| [Defendants' Counsel:] | Yes. |
| [Plaintiff's Counsel:] | I have authority for 7k.  I will forward a settlement agreement.<br>As to other settlement terms, our settlement agreement includes a confidentiality provision, as |

---

[1] Byrdie Anderson is no longer a defendant in this case.  (Dkt. No. 6.)

2

|   |   |
|---|---|
| 1 | well as mutual releases, and a provision for |
| 2 | electronic signatures. Let me know if any of these additional terms are problematic. |

(Dkt. No. 19-2 at 6.)

On May 28, 2015, Plaintiff filed a notice of settlement with the Court. (*See* Dkt. No. 14.) Plaintiff's notice of settlement document was stricken from the record for procedural non-conformance with the local rules because it also contained an ex parte request to vacate all dates set in the case. (See Dkt. Nos. 11-12, 13, 15.) Nonetheless, the Court recognized in a minute order that the notice of settlement was filed. (Dkt. No. 14.)

In late July of 2015, the Court held a settlement disposition conference. The parties informed the Court that they disagreed on whether their settlement agreement included a confidentiality provision as a material term, and requested this Court's assistance. Plaintiff requested to lodge briefs with this Court on the issue, and so the Court set deadlines to do so. (Dkt. No. 17.) Defendants submitted a letter brief; Plaintiff did not. After reviewing the letter brief, on September 22, 2015, the Court issued an order stating that to the extent the parties requested this Court make a determination on whether the settlement reached by the parties included a confidentiality provision, a motion to enforce the settlement agreement would need to be filed. Defendants filed a motion to enforce the settlement before this Court on October 19, 2015. The matter was fully briefed and taken under submission on November 30, 2015. (Dkt. Nos. 19-21.)

## II. The Parties' Dispute

Plaintiff contends the parties never reached a settlement agreement because there was no "meeting of the minds" as to the confidentiality provision, which Plaintiff wants included in the settlement agreement. (Dkt. No. 20.) In support, Plaintiff points to the April 28, 2015 email exchange, wherein after Plaintiff agreed to the $7,000 monetary amount, she also referenced other terms, which included the confidentiality provision. Plaintiff asserts that because Defendants were not amenable to including the

confidentiality provision, the parties did not reach a settlement.

Defendants contend the parties reached an agreement once counsel for the parties each confirmed their authority to settle for the proposed monetary amount and after notice that remediation to the property was completed. Defendants contend that Plaintiff had many opportunities to propose confidentiality as a material term during settlement negotiations, but it was never expressed until after they reached an agreement. Thus, Defendant contends, confidentiality was not a negotiated part of the settlement. (Dkt. No. 19-1 at 3.)

### III. Discussion

#### a. The Court's Authority To Enforce Settlements

Courts have inherent power to enforce settlements between parties in cases pending before it. *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978) ("[I]n the usual litigation context . . . courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it; the actual merits of the controversy become inconsequential.") "However, the district court may enforce only complete settlement agreements. [] Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted, emphasis omitted). "In other words, the parties must have evidenced an intent to be bound by the agreement and also show agreement as to the material terms of the agreement." *Oskar Sys., LLC v. Club Speed, Inc.*, 2011 U.S. Dist. LEXIS 39635, *12 (C.D. Cal. Apr. 5, 2011) (discussing *Callie*). Here, the parties do not dispute that this Court has the power to enforce a settlement agreement. (*See* Dkt. No. 19-1 at 2; *see* Dkt. No. 20, *passim*.) Additionally, neither of the parties request an evidentiary hearing, nor do they request to proffer additional evidence. The record also does not indicate an evidentiary hearing is necessary. Accordingly, the Court turns to the substance of the parties' dispute.

#### b. Construction And Enforcement Of Settlement Agreements

The construction and enforcement of settlement agreements are governed by the

principles of local contract law, even if the underlying cause of action is federal. *United Commercial Ins. Serv. Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir.), *cert. denied*, 506 U.S. 1022 (1992) ("A settlement agreement is treated as any other contract for purposes of interpretation"). Accordingly, "[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Id*. (citation omitted). "This is true even though the underlying cause of action is federal." *Id.* (citations omitted).

Although neither party discusses which local law governs this dispute, the Court finds the principles of California contract law apply here. Defendant Rolaro Corporation is a California corporation, and the restaurant is located in California. (Dkt. No. 19 at 1; Dkt. No. 1 at 2.) Plaintiff is a California resident. (Dkt. No. 1 at 2.) The events as alleged in Plaintiff's Complaint occurred in California. (Dkt. No. 1 at 3-4.) Accordingly, California law applies to govern this dispute.

Plaintiff did not cite to any authorities at all in his brief. (*See* Dkt. No. 20, *passim*.) Defendants largely rely on Illinois cases that contain factually similar situations to support their position.[2] (Dkt. No. 19-1 at 3, *citing Platcher v. Health Professionals, Ltd.*, 549 F. Supp. 2d 1040 (C.D. Ill. 2008); *Dillard v. Starcon Int'l, Inc.,* 483 F.3d 502 (7th Cir. Ill. 2007)). In particular, Defendants argue that *Platcher* and *Dillard* support the proposition that courts reject efforts by counsel to require a party to accept a confidentiality clause when there was no evidence the parties contemplated including the clause during their negotiations. *Id.* Defendants urge the Court to likewise find here that confidentiality is not a material term to the parties' agreement, and that the agreement should be enforced in accordance with its plain meaning. Defendants do not explain whether they contend that principles under Illinois law governs this analysis and if so,

---

[2] The Court notes that Defendants also provided Ninth Circuit authorities in the event Plaintiff argued that no agreement was reached because it was not memorialized in writing. (Dkt. No. 19-1 at 3-4.) But Plaintiff did not make such an argument (Dkt. No. 20, *passim*), and so the Court need not address those authorities here.

why. Nonetheless, the Court has reviewed Defendants' authorities.

In *Dillard*, the parties orally negotiated certain terms that focused on the degree of compensation to be paid and other material aspects. *Id.,* 483 F.3d at 504-05. After the parties entered into an oral settlement, Starcon requested additional terms be placed in the written settlement agreement, including a confidentiality provision, to which Dillard disagreed. Starcon filed a motion to enforce the oral agreement. *Id.* 506. The magistrate judge found the parties reached a meeting of the minds on all material terms, the terms were sufficiently definite, and that disputes about the confidentiality provision and other terms that subsequently arose over the written agreement centered on non-material terms. *Id.* at 506. The magistrate judge ordered the oral settlement enforced, and declined to enforce inclusion of the additional terms. *Id.* The Seventh Circuit affirmed the magistrate judge's decision. *Id.* at 509. In *Platcher,* the district court essentially followed the same reasoning in *Dillard*. The *Platcher* court concluded that there was a meeting of the minds on all material aspects for settlement, and that at no time before the meeting of the minds was confidentiality considered. The *Platcher* court reasoned that "if confidentiality had been important, it … would have been a material negotiated item of settlement. It was not and Defendants must bear that consequence." *Id.,* 549 F. Supp. 2d at 1046-47.

Although *Dillard* and *Platcher* are factually analogous to this case, which serve as instructive persuasive authorities, Illinois state law and federal law governed those disputes. *Dillard,* 483 F.3d at 506-07; *Platcher,* 549 F. Supp. 2d at 1046. Defendants do not provide the Court with authorities to necessarily conclude that the outcome would be the same if principles of California law were applied. Consequently, the Court finds a review of California law is needed to determine the parties' dispute.

Under California law, the determination of the existence or terms of an agreement is made by reference to the objective intent of the parties. *United Commercial Ins. Serv., Inc.*, 962 F.2d at 856. Objective intent is "the intent manifested in the agreement and by surrounding conduct[,] rather than the subjective beliefs of the parties. For this reason, the true intent of a party is irrelevant if it is unexpressed." *Id.* (citations omitted);

*Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006) ("In analyzing '[m]utual consent[, courts apply] . . . an objective standard . . . to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.'" (citation omitted)).

"[T]here is no contract until there has been a meeting of the minds on all material points." *American Employers Group, Inc. v. Employment Development Dept.*, 154 Cal. App. 4th 836, 846 (2007) (emphasis and internal quotation marks omitted). "Mutual intent is determinative of contract formation because there is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense. ... Thus, the failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract." *Id.* (internal quotation marks omitted). "A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain." *Lindsay v. Lewandowski*, 139 Cal.App.4th 1618, 1622 (2006).

Whether any material terms are missing from the contract "depends on the agreement and its context and also on the subsequent conduct of the parties." *Lamle v. Mattel, Inc.,* 394 F.3d 1355 (Fed. Cir. 2005) (*citing Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.*, 36 Cal. 3d 752 (1984), *overruled on other grounds by Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85 (1995)). The court may take into consideration the record of the parties' negotiations when determining whether terms are material. *See Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1120-21 (C.D. Cal. 2002), *aff'd*, 64 Fed. App'x 241 (2003) (*citing Weddington Productions*, 60 Cal. App. 4th at 808) ("Where parties agree to the material terms of a contract, they cannot avoid the formation of a valid and binding agreement by silently reserving an issue, and later claiming that it was material to their willingness to enter into a contract …. [O]ne measure of whether terms are 'material' is whether they have been the subject of debate and discussion during the course of the parties' negotiations").

Here, in reviewing the objective intent of the parties and based on the outward manifestations and expressions of the parties, this Court finds a settlement agreement was reached on April 28, 2015, and that confidentiality was not a material term to the settlement. Counsel for the parties negotiated over a period of weeks regarding the terms of the settlement, which focused on the monetary amount to be paid and remediation to the property. (Dkt. No. 19-2 at 4-7.) At no time during the course of those negotiations did Plaintiff mention confidentiality, which indicates that the confidentiality provision was not material. *Inamed Corp.*, 275 F. Supp. 2d at 1120-21. In contrast, it is readily apparent that the monetary amount and remediation to the property were important to Plaintiff and were negotiated as material terms.

The parties ultimately agreed to the material terms that Defendants would pay a certain monetary amount, and that the issues with the property be remediated in exchange for Plaintiff settling his claims. Accordingly, there was a meeting of the minds on these material points that resulted in the formation of a settlement agreement, and confidentiality was not one of those points.

It was not until after the material terms of compensation and remediation were agreed upon that Plaintiff mentioned additional terms regarding confidentiality, mutual releases, and provision for electronic signatures. (Id. at 6.) Simply because Plaintiff mentioned additional terms does not mean those additional terms were material. Indeed, no evidence in the record points toward an objective intent that they were material. In sum, although Plaintiff wishes he had negotiated for confidentiality as part of the agreement, it was not manifested in the agreement or by the surrounding conduct. *United Comm. Ins. Serv. Inc.,* 962 F.2d at 856. Thus, the parties' subsequent dispute over the additional non-material confidentiality term does not alter the fact that an agreement was reached on April 28, 2015.

Furthermore, Plaintiff's subsequent outward manifestation of conduct, of filing a notice that informed the Court the parties reached a global settlement, also belies Plaintiff's position that the parties did not ever reach a settlement. *See supra*, p. 3; *see*

*generally e.g., U.S. EEOC v. Hosp. Housekeeping Sys. of Houston, Inc.,* 2013 U.S. Dist. LEXIS 155154, *16 (E.D. Cal. Oct. 28, 2013) (parties' representation to the Court that they reached a full settlement was an objective manifestation of consent to a binding settlement agreement; additional outstanding terms that were later disputed were not material because if those provisions were crucial and material to end the bargain, they would have been previously identified). Accordingly, for the foregoing reasons, this Court finds the parties reached a settlement agreement and that the settlement did not include a confidentiality provision as a material term.

### IV. Conclusion

For the reasons stated above, the Court **RECOMMENDS** Defendants' motion to enforce the settlement be **GRANTED.** (Dkt. No. 19.) The Court further **RECOMMENDS** an order be issued stating that the settlement between the parties for a total sum of Seven Thousand Dollars ($7,000.00) and without any conditions of confidentiality is enforced, and direct the parties to finalize the settlement accordingly, and submit a joint motion for dismissal by a deadline set by the assigned District Judge.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **February 4, 2016**. The document should be captioned "Objections to Report and Recommendation." Any response to the objections shall be filed and served on or before **February 11, 2016**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 21, 2016

Hon. Nita L. Stormes
United States Magistrate Judge